HON. ROBERT S. LASNIK
NOTED ON CALENDAR: 8/2/13
WITHOUT ORAL ARGUMENT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON, AT SEATTLE

VINCE M. MULCAHY and BECKY L. MULCAHY,

　　　　　　　　　　　　Plaintiffs,

　　v.

FEDERAL HOME LOAN MORTGAGE CORPORATION, WELLS FARGO BANK, N.A., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., NORTHWEST TRUSTEE SERVICES, INC., and DOE DEFENDANTS 1 through 20 inclusive,

　　　　　　　　　　　　Defendants.

Case No. 2:13-cv-01227-RSL

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

COME NOW Plaintiffs Vince and Becky Mulcahy, to respond to the Motion to Dismiss filed by Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), Federal Home Loan Mortgage Corporation ("Freddie Mac"), and Mortgage Electronic Registration Systems, Inc. ("MERS"). Because Plaintiffs have stated claims to set aside the trustee's sale for violations of the Washington Deed of Trust Act, and for common law misrepresentation, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint.

//

RESPONSE TO MOTION TO DISMISS   - 1
Case No. 2:13-cv-01125-RAJ

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

## I. **FACTUAL ALLEGATIONS**

The Mulcahys are the former owners of the Property.  The Mulcahys had owned the Property for several years before losing it to the instant foreclosure.  They obtained a mortgage loan on the Property from Golf Savings Bank on or about July 10, 2006 and in connection with that loan, they signed a Promissory Note and a Deed of Trust.  The Deed of Trust was recorded in the records of Whatcom County, Washington on July 13, 2006.  The Promissory Note is payable to Golf Savings Bank and the "Lender" on the Deed of Trust is similarly listed as Golf Savings.  Nevertheless, Defendant MERS is listed as the Beneficiary on the Deed of Trust.  Plaintiffs maintain that this assertion is entirely false as Defendant MERS was never given a beneficial interest in the Deed of Trust by the Note Holder or anyone else.

During the years that the Defendants had the loan, they made mortgage payments to Defendant Wells Fargo.  They also spent a great deal of their own money on making repairs and upgrades to the Property, which total almost $350,000.00.  Their goal upon buying and repairing the Property was to have a place to raise their family, to have a rental unit to derive additional income and to be able to live there in retirement.  They used their life savings to attain, upgrade and keep the Property.

When they began to have financial trouble in 2009 and problems with making the payments, they immediately contacted Wells Fargo and spoke to numerous different representatives seeking a modification.  They repeatedly sent in all of the documentation and financial information that the representatives indicated was needed for a loan modification, only to get the runaround.  They stayed in contact with representatives of Defendant Wells Fargo on a regular basis and tried to promptly respond to all requests for additional and/or duplicative information. The Mulcahys were assured that since they were being evaluated for a

RESPONSE TO MOTION TO DISMISS   - 2
Case No. 2:13-cv-01125-RAJ

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

loan modification, a foreclosure would not occur.  In spite of those assurances, a foreclosure was initiated in 2009, but Mr. Mulcahy was simultaneously being advised by the representatives of Defendant Wells Fargo that the sale would be discontinued because they were still working on the loan modification. The first foreclosure sale was originally scheduled to take place on April 2, 2010, but it was cancelled by Defendant Wells Fargo.  Therefore, Mr. Mulcahy had reason to believe the representations made by Defendant Wells Fargo's employees.

Mr. Mulcahy continued to be in regular communication with Defendant Wells Fargo. Every time that the representatives asked for additional documentation, Mr. Mulcahy provided it and kept waiting for a response.  In February, 2010, Defendant Wells Fargo had advised them that they needed to make monthly payments for three months because they were approved for a temporary modification with payments that were approximately one half of their regular mortgage payments.  They were asked to have the payments made by automatic withdrawals form their checking account.  Automatic withdrawals were made from their checking account on February 2, 2010, March 2, 2010, April 2, 2010, May 5, 2010, June 7, 2010 and July 7, 2010.  Even though they had originally been instructed just to make the three payments, they did not take any action when payments were taken out in subsequent months, hoping that it was just part of the process.  They figured that they just needed to keep paying and wait it out. However, in August 2010, they noticed that Defendant Wells Fargo had not make the automatic withdrawal and called to see what was happening.  They were advised that they had been "dropped out" of the loan modification program because they had not sent in Profit and Loss Statements every month to Defendant Wells Fargo.  (The Mulcahys are self-employed.)  This was news to Mr. Mulcahy, who had never been advised to send in these statements on a

RESPONSE TO MOTION TO DISMISS   - 3
Case No. 2:13-cv-01125-RAJ

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

monthly basis.  They continued to call and to try to get authorization to send in loan modification paperwork again, along with all of the requested Profit and Loss Statements, but meanwhile they received notices about a new foreclosure sale.  The new foreclosure sale date was December 27, 2010.

By November 2010, in spite of the fact that Mr. Mulcahy had made numerous calls and received lots of assurances from representatives of Defendant Wells Fargo, the Mulcahys were getting very nervous and needed a definitive response from Defendant Wells Fargo about the loan modification.  Mr. Mulcahy finally spoke with a Tabitha at Defendant Wells Fargo on November 22, 2010 who confirmed that they could reapply for a modification and she specifically told him that the pending foreclosure sale had been cancelled.  Tabitha specifically said that there was no sale.  Mr. Mulcahy made a note to himself during this telephone call, just as he had done on numerous other occasions when speaking with Defendant Wells Fargo.  The Mulcahys breathed a small sigh of relief knowing that the foreclosure was not going to happen, and they continued to call in to Defendant Wells Fargo to get an update on the loan modification.

Based upon the fact that the sale had been cancelled previously, the Mulcahys relied upon the representation made by Tabitha, and they sent in their loan modification paperwork and waited to hear back from Wells Fargo about what to do.  On December 6, 2010 they were asked to send in another hardship letter and some additional documentation and they did so.  Mr. Mulcahy sent it by fax.  On December 10, 2010, the Mulcahys received a letter from Defendant Wells Fargo confirming that they were being considered for a loan modification.

On December 15, 2010, Mr. Mulcahy had another conversation with a representative at Defendant Wells Fargo who also affirmed that there was no sale date pending and that his wife

RESPONSE TO MOTION TO DISMISS   - 4
Case No. 2:13-cv-01125-RAJ

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

needed to sign the Financial Information Sheet so that the loan modification paperwork could be processed. Mrs. Mulcahy did so and that too was sent in by fax on December 17, 2010. On December 18, 2010, the Mulcahys received another letter from Defendant Wells Fargo requesting the same financial information that Mr. Mulcahy had faxed the day before with a 10 day deadline for compliance. (Compliance with this deadline would have been on a date past the scheduled foreclosure sale – December 27, 2010.) On December 20, 2010, Mr. Mulcahy called Defendant Wells Fargo to make certain that they had received the documentation he faxed in and the representative confirmed that it had been received. At no time during any of these conversations did anyone at Defendant Wells Fargo advise Mr. Mulcahy that his foreclosure sale scheduled for December 27, 2010 was moving forward and every time that he asked about it, he was advised that there was no pending sale date.

Mr. Mulcahy did not talk to anyone from Defendant Wells Fargo for the rest of the holiday season after the call on December 20, 2010. He figured that the holidays had caused a delay in processing and he would wait to hear something more before he called in again. Unfortunately, Mr. Mulcahy had a stroke on January 18, 2011. While he was still recovering, they were served with an eviction Summons and Complaint. The Mulcahys had no idea whatsoever that the foreclosure sale was not cancelled.  When they reviewed the caption of that Summons and Complaint it was the first time that they learned that their loan was apparently owned by Defendant Freddie Mac. At no time during the process did anyone at Defendant Wells Fargo advise them that this was the "owner" of the loan and none of the foreclosure documents so indicate. In fact, the Notice of Default document specifically states that the Beneficiary (Note Owner) is Defendant Wells Fargo. That statement is demonstrably untrue, unless Defendant Freddie Mac has decided to start a new business in buying up

RESPONSE TO MOTION TO DISMISS   - 5
Case No. 2:13-cv-01125-RAJ

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

properties in which it has no interest at foreclosure sales, but that is highly unlikely.

The problems with the foreclosure documentation began on or about December 11, 2009, when Jeff Stenman, an employee of Defendant NWTS, signed an Assignment of Deed of Trust on behalf of MERS, contending that he was a Vice President of that entity.  The Assignment purported to assign the beneficial interest in the Deed of Trust to Defendant Wells Fargo.  Presumably, Mr. Stenman was instructed to take this action by representatives of Defendant Wells Fargo.  However, there is no evidence that the Promissory Note was endorsed as payable to Defendant Wells Fargo and that it was physically transferred to the possession of Defendant Wells Fargo by the original lender, Golf Savings Bank.  The Assignment was recorded in the records of Whatcom County, Washington on December 16, 2009.  Further, there is no evidence at all nor any reason to believe that Defendant MERS was ever the Note Holder or had any interest in the Note at all.

Immediately after the Assignment was recorded, an Appointment of Successor Trustee document was recorded in the records of Whatcom County, Washington on December 16, 2009.  The Appointment of Successor Trustee document was signed by Vonnie McElligott, another employee of Defendant NWTS, who signed the document purporting to appoint Defendant NWTS as the trustee as an Attorney-in-Fact for Defendant Wells Fargo.  Again, there is no evidence whatsoever to indicate that Defendant Wells Fargo had the legal authority to make such an appointment and the Mulcahys contend that even if Defendant Wells Fargo had that power in December 2009, such act could not be undertaken by employees of the new trustee.  In essence, Defendant NWTS is appointing itself as the foreclosing trustee, a breachy of its duties of good faith to both parties to the foreclosure.  Further, since Defendant Freddie Mac was the purported Note Holder, it was the only entity with the legal authority to appoint a

RESPONSE TO MOTION TO DISMISS   - 6
Case No. 2:13-cv-01125-RAJ

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

successor trustee under Washington law.

On December 22, 2009, Ms. McElligott signed a Notice of Trustee's Sale document as the authorized signer for Northwest Trustee Services, but indicated next to her signature that it was "effective" as of December 25, 2009 – a legal holiday.  Further, the Mulcahys maintain that a document signer cannot render the effectiveness of the signature to a date in the future under Washington law.  The document was signed on December 22, 2009, in advance of the day on which the foreclosure could proceed under Washington law.  The Mulcahys further maintain that legal documents cannot be "effective" on legal holidays.  The document was recorded in the records of Whatcom County, Washington on December 28, 2009.  This foreclosure sale did not take place.

On or about August 11, 2010, a John Kennerty of Wells Fargo Home Mortgage, a subsidiary of Defendant Wells Fargo, signed a Foreclosure Loss Mitigation Form attesting under penalty of perjury that Wells Fargo Home Mortgage or someone acting on its behalf had "exercised due diligence to contact the borrower as required in Section 2(5) of Chapter 292, Laws of 2009" and then waited for fourteen days after that requirement to send the Mulcahys the documents required by the statute regarding the foreclosure.  The Mulcahys maintain that this assertion by Mr. Kennerty is entirely untrue.  No one from Defendant Wells Fargo or Wells Fargo Home Mortgage tried to contact the Mulcahys about the impending foreclosure and they have no knowledge that a new one would be initiated that month.  Further, based upon information and belief, the Mulcahys maintain that Mr. Kennerty had no personal knowledge whatsoever about their file, that he is not a Vice President of Wells Fargo Home Mortgage as indicated on the document, and that he could not provide a statement under penalty of perjury about their loan because he had never even reviewed their loan file before signing the

RESPONSE TO MOTION TO DISMISS   - 7
Case No. 2:13-cv-01125-RAJ

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

1   document.

2       At some time after August 20, 2010, the Mulcahys received a Notice of Default posted

3   at their residence and in the mail.  These documents had a signature block for Defendant Wells

4   Fargo by its "duly authorized agent" Northwest Trustee Services, Inc., but were unsigned.  That

5   document reads that the "Beneficiary (Note Owner)" is Defendant Wells Fargo.  The Mulcahys

6   maintain, based upon information and belief, that that statement is entirely untrue, as noted

7   above and below.  It is now clear that the purported Note Holder was Defendant Freddie Mac

8   and according to the records and policies and procedures of Defendant Freddie Mac, it was the

9   owner of the Mulcahys' loan and had been since it purchased the loan.

10

11      As noted above, Defendant Wells Fargo caused this first foreclosure sale to be cancelled

12  because they were working on a loan modification.  However, Defendant NWTS did not issue

13  and cause to be recorded in the records of Whatcom County, Washington a Notice of

14  Discontinuance of Trustee's Sale until September 20, 2010, almost nine months after the initial

15  recording of the Trustee's Sale notice.  That document was also signed by Ms. McElligott on

16  September 14, 2010 on behalf of Defendant NWTS.

17

18      Meanwhile, Defendant NWTS, apparently acting on behalf of Defendant Wells Fargo,

19  initiated another foreclosure sale by way of Ms. McElligott signing another Notice of Trustee's

20  Sale document ("NOTS") on September 14, 2010, but noting that her signature was somehow

21  not effective until September 20, 2010 simply because there was handwritten notation on the

22  document.  The document was recorded in the records of Whatcom County, Washington on

23  September 20, 2010.  This NOTS document also indicated that the foreclosure was being

24  conducted on behalf of Defendant Wells Fargo when, in fact, the Trustee's Deed issued after

25  the foreclosure sale was conducted on January 4, 2011 indicates that the alleged Note Holder

26

27

RESPONSE TO MOTION TO DISMISS   - 8
Case No. 2:13-cv-01125-RAJ

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

was Defendant Freddie Mac.  In addition, the amounts listed on the NOTS as being due include charges for "Lender's Fees & Costs".  Since the Lender is identified on the loan documents as Golf Savings Bank, these charges represent an untruth if they were actually fees and charges being imposed by the mortgage loan servicer, Defendant Wells Fargo.

In spite of the fact that all of the parties to this transaction knew that Defendant Wells Fargo was not the Note Holder, the Trustee's Deed falsely states that "Wells Fargo Bank, NA, being then the holder of the indebtedness secured by the Deed of Trust, delivered to said Grantor a written request directing Grantor to sell the Property in accordance with law and terms of the Deed of Trust."   The document contains other false statements, such as identifying the "Beneficiary" as Defendants MERS and/or Wells Fargo, when neither one of these entities meet the definition of "beneficiary" as contained in the Washington Deed of Trust Act.  While Defendant Wells Fargo may well have been the highest bidder at the sale (the Mulcahys do not know who was actually bidding), but if it was, it was only doing so in its capacity as the servicer of the loan and the actual owner of the loan (Note Holder) was Defendant Freddie Mac.  The Trustee's Deed was signed by Heather Westfall on behalf of Defendant NWTS on January 4, 2011 and was recorded in the records of Whatcom County, Washington on January 6, 2011.

After they received the eviction notices, the Mulcahys were in contact with the paralegal at the offices of the attorneys who initiated the eviction on behalf of Defendant Freddie Mac.  The paralegal advised Mr. Mulcahy that they were not approved for a loan modification because they had only made two trial period payments.  Mr. Mulcahy advised her that this statement was entirely untrue and that he had proof that they had made six months' of payments until Defendant Wells Fargo stopped making the withdrawals in August 2010.

RESPONSE TO MOTION TO DISMISS   - 9
Case No. 2:13-cv-01125-RAJ

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

Further proof of the inaccurate accounting undertaken by Defendant Wells Fargo is in the 1099 form that the Mulcahys received from it regarding payments made in 2010.  In spite of the fact that they made payments totaling at least $10,602.00, the 1099 indicated that they had only paid $5,725.55 in interest.  Since their trial period payments were less than the regular interest payments due under the original terms of their loan, it appears that all of their trial period payments should have been applied to outstanding interest amounts owing since that is the requirement under the terms of the Promissory Note.  (The Note requires that payments made be first applied to outstanding interest, then to principal, then to fees and costs.  Since the Mulcahys were behind on the loan, there would have been interest arrears.)  Instead, it appears that a significant portion of the payments were used to pay Defendant Wells Fargo and others allegedly incurred fees and costs, in contravention of the requirements of the Note.

The Mulcahys were caught in a trap commonly referred to as the "dual track", where a mortgage loan servicer commences and pushes forward with a foreclosure sale, all the while representing to the homeowner that their request for a loan modification is being reviewed.  Homeowners are assured by the representatives handling the loan modification that the foreclosure sale has either not even been initiated or that it has been cancelled when, in fact, the foreclosure sale is being pursued by another part of the mortgage loan servicing company.  A new law was just passed in Washington which prohibits this "dual track" while a homeowner is being considered for a loan modification through mediation, and 14 national banks, including Defendant Wells Fargo, signed onto Consent Orders with their federal regulators agreeing not to pursue foreclosure while a loan modification is pending.  The reason that the law was passed and the Consent Orders were presented to the banks is exactly because of situations like this.  The Mulcahys were assured repeatedly by the loan modification staff that a foreclosure had

RESPONSE TO MOTION TO DISMISS   - 10
Case No. 2:13-cv-01125-RAJ

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

been stopped and they reason to rely upon those representations.  Now they are faced with the loss of their family home, further potential serious damage to Mr. Mulcahy's health in the event that the family is forced to move, and destruction of the family's senses of security, all because Defendant Wells Fargo did not bother to make certain that the two separate parts of its company were talking to each other and that the foreclosure on the Mulcahys home was stopped.  And they were prevented from taking action, such as filing a lawsuit or filing a bankruptcy, to stop the sale because of the misrepresentations repeatedly made to them by the representatives of Defendant Wells Fargo.  The actions of the Defendants herein is despicable.

The Mulcahys have suffered significant emotional distress as a result of the loss of their home.  At the present, they have not been evicted from the property as Defendant Freddie Mac voluntarily terminated the eviction process after obtaining a writ of restitution which would have allowed them to be evicted.  The Mulcahys have waited a very significant period of time hoping that Defendant Freddie Mac would do the right thing and give them the house back with a loan modification.  That has not occurred.  The Mulcahys have had sleepless and anxious days and nights wondering if they and their children will be removed from the house.  It has exacerbated Mr. Mulcahy's complications from the stroke.  They are tired of being in limbo and want to get their house back and to have an affordable loan.  They want to be able to sleep at night.

The Mulcahys' previous claims for violations of the Deed of Trust Act, intentional and negligent misrepresentation and violations of the Consumer Protection Act were dismissed by the state court based upon the statute of limitations provided in RCW 61.24.127, with leave to amend the Complaint to pursue claims for declaratory relief and for damages related to the Mulcahys' allegations that the foreclosure sale is invalid under the reasoning in *Albice*.

RESPONSE TO MOTION TO DISMISS   - 11
Case No. 2:13-cv-01125-RAJ

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

## II. EVIDENCE RELIED UPON

This Response is based upon the Complaint, Second Amended Complaint and moving papers, as well as the pleadings and documents on file herein.

## III.  ARGUMENT

**A.     Plaintiffs' Claims Are Pleaded with Particularity and Should Withstand the Motion to Dismiss.**

Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The complaint must give defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (internal quotation and modification omitted). To meet this requirement, the complaint must be supported by factual allegations. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950, 177 L.Ed.2d 868 (2009). "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. *Id*. at 1949-50. *Iqbal* and *Twombly* therefore prescribe a two step process for evaluation of motions to dismiss. The Court first identifies the non-conclusory factual allegations, and the Court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." *Id.; Erickson v. Pardus*, 551 U.S. 89 (2007). "Plausibility," as it is used in *Twombly* and *Iqbal,* does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "The plausibility standard is not akin to a `probability requirement,' but it asks for more than a sheer

RESPONSE TO MOTION TO DISMISS   - 12
Case No. 2:13-cv-01125-RAJ

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In this case, an abundance of facts support the Mulcahys' claims against all of the Defendants, and they have pled their claims with sufficient particularity to meet the fraud pleading standard under CR 9, even though they do not currently have that claim. Moreover, the Mulcahys have exceeded the duty of pleading under Washington law, which should apply in the instant federal-court diversity action, to the extent it is outcome determinative. In deciding whether state law provides a "rule of decision," federal courts are to consider whether "the outcome of the litigation in the federal court [would] be substantially the same . . . as it would be if tried in a State court". *Guar. Trust Co. v. York*, 326 U.S. 99, 109 (1945). It then must decide whether the state-law rule was "intended to be bound up with the definition of the rights and obligations of the parties". *Byrd v. Blue Ridge Rural Elec. Coop.*, 356 U.S. 525, 536 (1958). And finally, whether the application of state law would further "the twin aims of the *Erie* rule: discouragement of forum shopping and avoidance of inequitable administration of the laws." *Hanna v. Plumer*, 380 U.S. 460, 468 (1965); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

Here, the lower pleading requirements of Washington law, *see McCurry v. Chevy Chase Bank, FSB*, 169 Wash.2d 96, 102, 233 P.3d 861, 863 (Wash. 2010), should control to the extent the more demanding requirements of federal law would dictate a different result. In *McCurry*, the Washington Supreme Court expressly rejected the heightened pleadings standards proscribed by the federal courts. This case was removed based upon diversity and so the

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

decisions made by this Court should be exactly the same as they would be in a state court. Because Defendants would have the opportunity to "forum shop" if a more demanding standard controlled claims involving fraud or deception, or the requirements of a state statute, once a state-court case is removed to federal court, the *Erie* doctrine weighs in favor of applying Washington's more permissive pleading standard here.  And in fact, the Defendants have engaged in forum-shopping by removing this case after the state court had issued an order which it disfavored.

**B.      The Mulcahys are entitled to declaratory relief because the foreclosure sale is invalid.**

In this case, all of the Defendants caused false and misleading documents to be recorded in the records of Whatcom County, Washington and used those documents to complete a foreclosure sale in violation of the requirements of the Deed of Trust Act. Compl. ¶¶ 2.10, 2.11, 2.15, 2.16. The DTA's strict requirements are especially important for the purported trustee like Defendant NWTS to follow. *Albice v. Premier Mortg.* Services of Washington, Inc., 174 Wash.2d 560, 575, 276 P.3d 1277, 1285 (Wash.,2012).  RCW 61.24.030(4) provides, in part, that a nonjudicial foreclosure cannot be held unless all of its requirements have been met.   The DTA defines "beneficiary" quite specifically as "**holder of the instrument or document evidencing the obligations secured by the deed of trust**, excluding persons holding the same as security for a different obligation."  RCW 61.24.005(2) (emphasis added).  This definition has remained unchanged since the statute was enacted and it is consistent with Article 3 of the UCC, as adopted by Washington, wherein the only person entitled to enforce the terms of a Promissory Note is the holder or a non-holder or transferee who obtains the right to enforce directly from the holder.  RCW 62A.3-203.  However, it is important to note that the DTA does

RESPONSE TO MOTION TO DISMISS   - 14
Case No. 2:13-cv-01125-RAJ

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

NOT use the additional Article 3 language regarding who may enforce. Thus, the DTA has specifically limited who may initiate a non-judicial foreclosure and that is solely and exclusively the "note holder". RCW 61.24.005(2). Further, there is no evidence before the Court that the Note Holder ever instructed anyone to appoint a new trustee or initiate a foreclosure sale. There is absolutely no evidence at all about the location of the Note when the foreclosure was initiated, but presumably it was in the possession of Defendant Freddie Mac – the actual beneficiary as defined by the DTA. RCW 61.24.005(2).

The trend in recent Washington opinions favors strict interpretation of foreclosing entities' duties under the DTA. Earlier this year, in *Schroeder v. Excelsior Management Group, LLC*, 297 P.3d 677, 683 (Wash. 2013), the Supreme Court emphasized that the DTA "**is not a rights-or-privileges-creating statute**" but rather presents non-waiveable requirements for foreclosing entities, and reiterated that "strict compliance [with the DTA] is required" *Id.* (citing *Albice v. Premier Mortg. Servs. of Wash, Inc.*, 174 Wash.2d 560, 568, 276 P.3d 1277 (2012)); *see also Walker v. Quality Loan Svc. Corp.*, No. 65975-8-I (Wash. Ct. App. Div. I, Aug. 5, 2013) (holding even pre-foreclosure plaintiffs may state a cause of action for damages under the DTA); *accord Rucker v. Novastar*, No. 67770-5 (Wash. Ct. App. Div. I, Aug. 5, 2013), *Leipheimer v. ReconTrust*, No. 67005-1 (Wash. Ct. App. Div. I, Aug. 5, 2013) (unpublished opinions) (emphasis added). In its recent decisions, the Washington Supreme Court has further clarified the duties of companies managing the foreclosure process, and has observed recently that "to prevent property from being wrongfully appropriated though nonjudicial means and to avoid constitutional and equitable concerns, at a minimum, a foreclosure trustee must be independent and 'owes a duty to act in good faith to exercise a fiduciary duty to act impartially to fairly respect the interests of both the lender and debtor.'"

RESPONSE TO MOTION TO DISMISS   - 15
Case No. 2:13-cv-01125-RAJ

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

*Schroeder, supra,* at 681 n.3 (Wash. 2013) (citing *Klem v. Washington Mutual Bank,* 176

Wash.2d at 789, 790, 295 P.3d 1179 (2013)). The Court has reiterated that Washington's Deed

of Trust Act "must be construed in favor of borrowers because of the relative ease with which

lenders can forfeit borrowers' interests and the lack of judicial oversight in conducting

nonjudicial foreclosure sales." *Klem*, *supra* (citing *Udall v. T.D. Escrow Servs., Inc.*, 159

Wash.2d 903, 915-16, 154 P.3d 882 (Wash. 2007)). Washington particularly emphasizes the

role of the courts in realizing the equitable goals of the CPA. *See, Klem*, 176 Wash.2d 771, 786,

("Given that there is no limit to human inventiveness, courts, as well as legislatures, must be

able to determine whether an act or practice is unfair or deceptive to fulfill the protective

purposes of the CPA.").

  Washington law emphasizes statutory limits on trustees. As RCW 61.24.030 provides:

It shall be requisite to a trustee's sale .....

(7)(a) That, for residential real property, before the notice of trustee's sale is
recorded, transmitted, or served, **the trustee shall have proof that the
beneficiary is the owner of any promissory note or other obligation secured
by the deed of trust.** A declaration by the beneficiary made under the penalty of
perjury stating that the beneficiary is the actual holder of the promissory note or
other obligation secured by the deed of trust shall be sufficient proof as required
under this subsection.

RCW 61.24.030(7)(a). Here, Defendant ReconTrust did not have a truthful Declaration (if any

at all) that Defendant BANA, the purported "beneficiary", was the owner of the "promissory

note or other obligation secured by the deed of trust" because that is not the relationship that it

had with Defendant Fannie Mae, as evidenced by its own servicing guidelines. *See,* Request

for Judicial Notice filed concurrently herewith. Certainly, Defendants BANA and Fannie Mae

knew that any such assertion was untrue. As noted by the Court in *Schroeder,* the DTA's

"requisites to a trustee's sale" very much matter. "**These are not, properly speaking, rights**

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

**held by the debtor; instead, they are limits on the trustee's power to foreclose without judicial supervision.**"  *Schroeder, supra,* at 683.  "It is well settled that the trustee in foreclosure must strictly comply with the statutory requirements.  *Albice,* 174 Wn.2d at 568 (citing *Udall,* 159 Wn.2d at 915-16). A trustee in a nonjudicial foreclosure may not exceed the authority vested by that statute. *Id.*"  *Schroeder* at 686.

The importance of the foreclosing trustee adhering to the requirements of the DTA was also laid out in another recent Washington Supreme Court case:

> Because the act dispenses with many protections commonly enjoyed by borrowers under judicial foreclosures, lenders must strictly comply with the statutes and courts must strictly construe the statutes in the borrower's favor. *Udall v. T.D. Escrow Servs., Inc.*, 159 Wn.2d 903, 915-16, 154 P.3d 882 (2007); *Koegel v. Prudential Mut. Sav. Bank*, 51 Wn. App. 108, 111-12, 752 P.2d 385 (1988). The procedural requirements for conducting a trustee sale are extensively spelled out in RCW 61.24.030 and RCW 61.24.040. Procedural irregularities, such as those divesting a trustee of its statutory authority to sell the property, can invalidate the sale. *Udall*, 159 Wn.2d at 911.
> .....
> **Without statutory authority, any action taken is invalid. As we have already mentioned and held, under this statute, strict compliance is required.** *Udall*, 159 Wn.2d at 915-16.

*Albice, supra,* at 564 (emphasis added).  The conclusion from reviewing the opinions in *Albice* and *Schroeder* is that the Supreme Court will invalidate a sale that was conducted in contravention of the requirements of the DTA.

Defendants here have engaged in executing entirely false documents.  As the Mulcahys specifically alleged in their Complaints, the Assignment of Deed of Trust and Appointment of Successor Trustee were executed by someone other than the actual beneficiary as defined under the DTA.  Complaint ¶¶ 2.10, 3.7; RCW 61.24.005(2).  The Washington Supreme Court in *Bain v. Metro. Mrtg. Group, Inc.*, 175 Wn.2d 83, 97, 285 P.3d 34 (2012), recently provided clarification regarding who may act as a "beneficiary" under the DTA; the effect of someone

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

who is not a "note holder" initiating a foreclosure; and whether a plaintiff may pursue a claim for violations of the Consumer Protection Act, RCW 19.86, *et seq.* ("CPA"), if an entity falsely asserts it is a "beneficiary." *Bain*, at 3-4. The Court made clear that the "beneficiary" requirement in the statute means what it says and that it must be "the actual holder of the promissory note or other instrument evidencing the obligation" and that such an entity has "the power to appoint a trustee to proceed with a nonjudicial foreclosure on real property." *Id.* The Court did not determine the effect of misrepresentations regarding beneficiary status, and left this determination to the trial court. Nevertheless, the Court also made very clear that a homeowner may pursue a claim for a violation of the CPA based violations of the DTA, "but it will turn on the specific facts of each case." *Id.*

Washington's statute is clear regarding who may appoint a successor trustee and initiate a foreclosure under the DTA:

> The trustee may resign at its own election or be replaced by the **beneficiary**. The trustee shall give prompt written notice of its resignation to the **beneficiary**. The resignation of the trustee shall become effective upon the recording of the notice of resignation in each county in which the deed of trust is recorded. If a trustee is not appointed in the deed of trust, or upon the resignation, incapacity, disability, absence, or death of the trustee, or the election of the **beneficiary** to replace the trustee, the **beneficiary** shall appoint a trustee or a successor trustee. Only upon recording the appointment of a successor trustee in each county in which the deed of trust is recorded, the successor trustee shall be vested with all powers of an original trustee.

RCW 61.24.010(2) (emphasis added). Defendants did not satisfy the requirements for appointing a proper trustee in Washington. RCW 61.24.005(2); 61.24.010.

The *Bain* case was focused on the use of MERS as the particular entity who was falsely claiming to be the "beneficiary", but the decision and analysis used by the Supreme Court would apply to any person or entity who falsely claims to be a "beneficiary". In this case,

RESPONSE TO MOTION TO DISMISS   - 18
Case No. 2:13-cv-01125-RAJ

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

1   Defendants were involved in the non-judicial foreclosure process and completed a foreclosure

2   in 2011, when none of them had the requisite authority under Washington law. According to

3   the *Bain* decision, the "beneficiary" described in the DTA means what it says: the entity

4   initiating the foreclosure must be the "note holder." The Supreme Court pointed out that in

5   order to demonstrate who may initiate a foreclosure as the "beneficiary",

> [T]he equities of the situation would likely (though not necessarily in every case)
> require court to deem that the real beneficiary is the lender whose interests were
> secured by the deed of trust or that lender's successors.  If the original lender had
> sold the loan, that purchaser would need to establish ownership of that loan, either
> by demonstrating that it actually held the promissory note or by documenting the
> chain of transactions.  Having "MERS" convey its interests would not accomplish
> this.

*Bain* at 30.

The Supreme Court further clarified the relevant rules in *Klem*, which addresses the

importance of the trustee's duties to the borrower under the DTA. RCW 61.24.010(4).  The

actions of the Defendants as described herein are a very clear violation of the duties of good

faith owed by the purported trustee to Plaintiffs.  RCW 61.24.010(4).   In *Klem,* citing to *Bain*

at 95-97, the Supreme Court reiterated the importance of adherence to the DTA requirements:

> While the Legislature has established a mechanism for nonjudicial sales, neither
> due process nor **equity will countenance a system that permits the theft of a
> person's property by a lender or its beneficiary under the guise of a
> statutory nonjudicial foreclosure**.  An independent trustee owes a duty to act
> in good faith to exercise a fiduciary duty to act impartially to fairly respect the
> interests of both the lender and the debtor is a minimum to satisfy the statute, the
> constitution and equity, at the risk of having the sale voided, title quieted in the
> original homeowner, and subjecting itself and the beneficiary to a CPA claim.

*Klem* at 19-20 (citations omitted) (emphasis added).  It is important to note, as Justice Madsen

does in the Concurrence, that the present standard for a trustee under the DTA is one of "good

faith" to all parties rather than a fiduciary duty, as it was historically, but that distinction does

RESPONSE TO MOTION TO DISMISS   - 19
Case No. 2:13-cv-01125-RAJ

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

1   not change the outcome of the Court's decision. RCW 61.24.010(4).  The conclusion in *Klem*

2   includes the following:

3
> We hold that the right to enjoin a foreclosure sale is an equitable remedy and the
4   > failure to enjoin a sale does not operate to waive claims based on the foreclosure
    > process where it would be inequitable to do so.  **Where applicable, waiver only**
5   > **applies to actions to vacate the sale and not to damages actions**.  We hold
    > that it is an unfair or deceptive practice under the CPA for a trustee of a
6   > nonjudicial foreclosure to fail to exercise its authority to decide whether to delay
    > a sale.
7

8   *Klem* at 28 (emphasis added).  Thus, a foreclosure that was done by someone without the legal

9   authority to initiate or conduct the sale must result in a finding that the sale is void.

10          The opinions expressed recently by the Washington Supreme Court are consistent with

11  other older cases as well and the newer cases cited favorably to them.  The Courts have

12  consistently noted that nowhere in the DTA is there language excusing the foreclosing trustee

13  from complying with its requirements if the person whose home is being foreclosed makes a

14  mistake, nor did the legislature see fit to include language permitting the foreclosing trustee to

15  avoid those responsibilities if they were inconvenient.  RCW 61.24, *et seq.*  As noted by the

16  Court in *Queen City Sav. & Loan Ass'n v. Mannhalt*, 111 Wn.2d 503, 760 P.2d 350 (1988),

17  citing to 1 V. Towne, *Wash. Prac.* § 605 (2d ed. 1976), "[F]oreclosure proceedings must

18  conform exactly to the statute." *Id.* at 514.   "Because the deed of trust foreclosure process is

19  conducted without review or confirmation by a court, the fiduciary duty imposed upon a trustee

20  is exceedingly high." *Cox v. Helenius*, 103 Wn.2d 383, 693 P.2d 683 (1985).   As noted by the

21  dissent in *Queen City*,

22
> Relatively unsophisticated borrowers used to be able to rely on the judiciary to prevent
23  > overreaching by lenders who make it their business to obtain every advantage from the
    > foreclosure process.  *See,* RCW 61.12.  Since the judiciary is not involved in deed of
24  > trust foreclosures under the Act, only the words of the Act itself stand between the
    > borrower and the lender eager to foreclose.  Unless we strictly construe the Act, that
25

26

27

RESPONSE TO MOTION TO DISMISS   - 20
Case No. 2:13-cv-01125-RAJ

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

1    protection will erode away to zero.

2    *Queen City*, *supra*, at 515, a decision which was cited with approval in other Supreme Court

3    decisions, including *Bain* and *Udall v. T.D. Escrow Services, Inc.*, 159 Wn.2d 903, 916, 154

4    P.3d 882 (2007).

5          The Washington DTA has three objectives: (1) that the nonjudicial foreclosure process

6    remains efficient and inexpensive; (2) that the process provides an adequate opportunity for

7    interested parties to prevent wrongful foreclosure; and (3) that the process promotes the

8    stability of land titles.  *Cox v. Helenius*, *supra*, at 387.  S*ee also,* RCW 61.24.030(6).  "Because

9    the deed of trust foreclosure process is conducted without review or confirmation by a court,

10   the fiduciary duty imposed on the trustee is exceedingly high."  *Id.* at 388-89.  In *Cox*, the

11   Washington Supreme Court noted that even if the plaintiffs had not properly acted to restrain

12   the sale, it would have nevertheless been voided because of the trustee's action.  *Id.*  The *Cox*

13   Court noted:

14
15
       Washington courts do not require a trustee to make sure that a grantor is protecting his
16     or her own interest. However, **a trustee of a deed of trust is a fiduciary for both the
       mortgagee and mortgagor and must act impartially between them.** G. Osborne, G.
17     Nelson & D. Whitman, *Real Estate Finance Law* § 7.21 (1979).

18
19              **The trustee is bound by his office to present the sale under every possible
                advantage to the debtor as well as to the creditor. He is bound to use not
20              only good faith but also every requisite degree of diligence in conducting the
                sale and to attend equally to the interest of the debtor and creditor alike.**
21
22     *Swindell v. Overton*, 310 N.C. 707, 712, 314 S.E.2d 512 (1984) (emphasis added).  *See,*
       *Blodgett v. Martsch*, 590 P.2d 298, 302 (Utah 1978) ("duty of trustee under a trust deed
23     is . . . to treat the trustor fairly and in according with a high punctillo of honor");
       *McHugh v. Church*, 583 P.2d 210, 213 (Alaska 1978); *Spires v. Edgar,* 513 S.W.2d 372
24     (Mo. 1974); *Whitlow v. Mountain Trust Bank*, 215 Va. 149, 207 S.E.2d 837 (1974);
       *Woodworth v. Redwood Empire Sav. & Loan Ass'n*, 22 Cal.App.3d 347, 99 Cal.Rptr.
25     373 (1971).

26   *Cox* at 389 (emphasis added).  The Supreme Court repeatedly cited to *Cox* in its recent

27

RESPONSE TO MOTION TO DISMISS   - 21
Case No. 2:13-cv-01125-RAJ

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

decisions and it is still the foundation of non-judicial foreclosure law in Washington.

In the *Udall* case, the Supreme Court reiterated the obligations of a trustee in a foreclosure and reminded us of the requirements of the DTA, which include a requirement that it be "construed in favor of borrowers because of the relative ease with which lenders can forfeit borrowers' interests and the lack of judicial oversight in conducting nonjudicial foreclosure sales." *Id.* at 915-916, citing to *Queen City Sav. & Loan Assn., supra*.

As to the purported foreclosing trustee, the Mulcahys have specifically identified the basis for their assertions that Defendant NWTS did not have the legal authority to act as a foreclosing trustee under Washington law and that they did not have the legal authority to initiate and/or complete a non-judicial foreclosure against the Mulcahys' real property because it was not appointed by a proper statutory beneficiary.  Compl. ¶¶ 2.9, 2.13, 2.16.  For its part, Defendant Wells Fargo violated its duties to Plaintiffs by executing documents purporting to make Defendant NWTS the successor trustee while it was not a "beneficiary" entitled to make such a designation under Washington law.  Compl. ¶¶ 2.9, 2.10.  Similarly, Defendant MERS at all relevant times was not a "noteholder", and accordingly violated the DTA by falsely asserting that it had the same when it purported to transfer its interest in order to allow the foreclosure sale to go forward. Compl. ¶¶ 2.1, 2.9, 2.16, 3.5. Thus, Defendant NWTS' violations of the DTA were accomplished at the direction and due to the actions of the other Defendants, and accordingly, Defendants should be held jointly and severally liable for Defendant NWTS' violations of the DTA in the course of its foreclosure procedures.

Despite opportunities to remedy the misconduct here, Defendant Wells Fargo failed to exercise any due diligence that might have obviated the need for the 2011 foreclosure sale. Compl. ¶¶ 2.2, 3.3, 3.7. Defendant Wells Fargo's employee also falsely asserted that

RESPONSE TO MOTION TO DISMISS   - 22
Case No. 2:13-cv-01125-RAJ

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220

Defendants Wells Fargo and Freddie Mac had contacted or attempted to contact the Mulcahys with regard to the foreclosure process. Compl. ¶ 2.12. Rather, as the Mulcahys allege, they were never contacted and thus lacked any knowledge of the impending foreclosure up to receipt of the Notice of Default. Compl. ¶¶ 2.12-13.

Defendant NWTS breached its duties by proceeding to sell the Mulcahy's home while knowing that Defendant Freddie Mac was the actual owner of the Note, not Defendant Wells Fargo which had directed Defendant NWTS to proceed with the sale. Compl. ¶ 2.16.  *See,* RCW 61.24.030(6).  Nevertheless, Defendant NWTS proceeded to sell the Mulcahys' Property.

In conclusion, the Defendants committed material breaches of the DTA by cooperating to carry out an unlawful sale of the Mulcahys' home despite full knowledge that the actual "beneficiary" under Washington law had not authorized the trustee's sale. Defendants' material breaches rendered the trustee's sale of the Mulcahys' home void under Washington law as articulated in *Albice*.  Because Washington courts have held that voiding the trustee's sale is the appropriate remedy for serious violations of the DTA like those committed here, and the facts alleged in the Mulcahys' Second Amended Complaint state a plausible basis for relief, Plaintiffs respectfully ask the Court to deny Defendants' Motion to Dismiss.

### IV.  CONCLUSION

Based upon the foregoing, Mr. and Mrs. Mulcahy maintain that this Court must deny the Motion to Dismiss in its entirety.

Dated this 12th day of August 2013.

LAW OFFICES OF MELISSA A. HUELSMAN, P.S.


/s/ Melissa A. Huelsman_____
Melissa A. Huelsman, WSBA #30935
Attorney for Plaintiffs

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 601
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 673-8220