UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
VINCE M. MULCAHY and BECKY L. MULCAHY,

          Plaintiffs,

    v.

FEDERAL HOME LOAN MORTGAGE CORPORATION, *et al.*,

          Defendants.
_____

No. C13-1227RSL

ORDER DENYING DEFENDANTS' MOTION TO DISMISS

This matter comes before the Court on a motion to dismiss filed by defendants Federal Home Loan Mortgage Corporation ("Freddie Mac"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Wells Fargo Bank, N.A. ("Wells Fargo"). Dkt. # 9. Having reviewed the memoranda and supplemental authority submitted by the parties,[1] the Court finds as follows:

---

[1] Plaintiffs' opposition (Dkt. # 14) was filed a week after its due date. It is apparent from both the excuses made and the quality of the work product that plaintiffs' counsel spent very little time drafting the opposition and refining her arguments: the fact section is largely cut and pasted from prior filings in this case and the legal analysis refers to entities that have no involvement in this litigation. Plaintiffs' counsel is warned that a surfeit of legal work does not excuse a failure to comply with the local rules of this district and does not justify shoddy legal work on behalf of her clients. This is not the first time counsel has failed to respond in the time allowed: plaintiffs' response to a dispositive motion in the state proceeding was also untimely. In the future, such filings will not be considered.

ORDER DENYING DEFENDANTS'
MOTION TO DISMISS

## BACKGROUND

In July 2006, plaintiffs borrowed $417,000 from Golf Savings Bank to purchase property in Whatcom County. The promissory note was secured by a deed of trust, which lists Golf as "lender," Whatcom Land Title Insurance Company as "trustee," and MERS as both "beneficiary" and "nominee" for the lender and the lender's successors and assigns. Dkt. # 8-4 at 9. Plaintiffs ran into financial difficulties in 2009 and defaulted on the loan. At the time, the debt had been purchased by defendant Freddie Mac and defendant Wells Fargo was servicing the loan.[2]

Plaintiffs, who were unaware that Freddie Mac had a beneficial interest in their loan, began communicating and working with Wells Fargo to obtain a modification of the terms of their promissory note. Wells Fargo issued a Notice of Default under the Washington Deeds of Trust Act ("DTA") on November 24, 2009, followed by a Notice of Trustee's Sale setting April 2, 2010, as the sale date. Plaintiffs continued their efforts to negotiate more manageable loan terms and were assured that their home would not be foreclosed upon because they were being evaluated for a modification. In February 2010, the parties agreed to a temporary modification. Plaintiffs set up an automatic withdrawal in Wells Fargo's favor, and the April foreclosure sale was cancelled. Although payments under the modified loan were supposed to last for only three months, Wells Fargo made six automatic withdrawals from plaintiffs' account beginning in February 2010 and ending in July 2010.

Plaintiffs allege that Wells Fargo stopped withdrawing mortgage payments and kicked them out of the loan modification program because plaintiffs failed to submit a monthly profit and loss statement. In August 2010, defendant Northwest Trustee Services, Inc.

---

[2] In December 2009, defendant MERS purported to assign whatever beneficial interest it had in the Deed of Trust to Wells Fargo. Dkt. # 8-4 at 31.

ORDER DENYING DEFENDANTS'
MOTION TO DISMISS                    -2-

("NWTS") issued a second Notice of Default under the DTA. Dkt. # 8-4 at 137.[3] A Foreclosure Loss Mitigation Form accompanied the Notice of Default and declared:

> The Beneficiary or beneficiary's authorized agent has exercised due diligence to contact the borrower as required by [RCW 61.24.031(5)] and, after waiting fourteen days after the requirements of [RCW 61.24.031] were satisfied, the Beneficiary or Beneficiary's authorized agent sent to the borrowers(s) [sic], by certified mail, return receipt, the letter required under [RCW 61.24.031].

Dkt. # 8-4 at 140. Wells Fargo's declaration that it had diligently but unsuccessfully attempted to contact plaintiffs is made under penalty of perjury. Nevertheless, it is clear that Wells Fargo was in actual contact with plaintiffs at the time, had favorably assessed their ability to pay the underlying debt and made alternative, albeit temporary, arrangements to avoid foreclosure, and was again in the process of negotiating a further modification. In such circumstances, other sections of RCW61.24.031 and the Foreclosure Loss Mitigation Form were applicable: the declaration of due diligence is an anomaly. The declaration appears to have been made by someone with no personal knowledge of Wells Fargo's contacts with plaintiffs and without reviewing the transactional history or current status of the loan.

Plaintiffs attempted to rectify the deficiencies that got them kicked out of the loan modification program, sending in profit and loss statements as requested and repeating paperwork that had previously been submitted. Nevertheless, a Notice of Trustee's Sale was issued on September 20, 2010, setting a sale date of December 27, 2010. As the sale date approached, plaintiffs became increasingly nervous about the lack of a decision regarding their loan modification. Throughout this period, Wells Fargo representatives assured plaintiffs that the foreclosure sale would not go forward because the parties were negotiating a modification. On November 22, 2010, a Wells Fargo employee named Tabitha specifically told plaintiffs that the pending foreclosure sale had been cancelled. Plaintiffs continued to pursue the loan

---

[3] Wells Fargo appointed NWTS as successor trustee in December 2009. Dkt. # 8-4 at 33.

ORDER DENYING DEFENDANTS'
MOTION TO DISMISS                             -3-

1  modification, sending in whatever information and forms Wells Fargo requested. When Wells
2  Fargo requested additional information on December 18, 2010 (apparently Mrs. Mulcahy had
3  not signed a financial information statement), it set a compliance deadline of December 28, 2010
4  (one day after the foreclosure sale had been scheduled to occur). Plaintiffs had sent the
5  requested information in the day before and called on December 20, 2010, to confirm that it had
6  been received: it had. At no point did any Wells Fargo employee mention that the foreclosure
7  sale was still pending on the property.

8        Plaintiffs' property was sold to Wells Fargo on behalf of Freddie Mac at a
9  foreclosure auction on December 27, 2010. Plaintiffs did not realize that the sale had occurred
10 until they received a notice of eviction in early 2011. Plaintiffs filed this action in state court on
11 December 28, 2012, seeking damages arising from various misrepresentations made to them
12 during the loan modification and foreclosure process, violations of the Deed of Trust Act, and
13 violations of the Consumer Protection Act. Dkt. # 8-1 at 9. The Honorable Deborra E. Garrett,
14 King County Superior Court Judge, dismissed all of plaintiffs' claims as time-barred. Although
15 the damage claims asserted by plaintiffs were expressly exempted from waiver under RCW
16 61.24.127(1), Judge Garrett dismissed them because plaintiffs filed their lawsuit one day after
17 the statute of limitations expired. RCW 61.24.127(2)(a). Plaintiffs were, however, granted
18 leave to amend their complaint to seek a judicial invalidation of the trustee sale, rather than
19 damages. Judge Garrett also reserved ruling on "whether, in the event the trustee's sale is
20 determined to be void, plaintiffs may be entitled to damages on claims or theories other than
21 those asserted pursuant to RCW 61.24.127." Dkt. # 8-3 at 19. The case was removed shortly
22 after plaintiffs filed their amended complaint.

23       Neither Wells Fargo nor Freddie Mac have pursued their efforts to evict plaintiffs
24 from the property.

25
26

ORDER DENYING DEFENDANTS'
MOTION TO DISMISS                 -4-

# DISCUSSION

## A. Standard for Rule 12(b)(6) Motion

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must indicate more than mere speculation of a right to relief. Twombly, 550 U.S. at 555. When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 at 558. A complaint may be lacking for one of two reasons: (i) absence of a cognizable legal theory or (ii) insufficient facts under a cognizable legal claim. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984). In ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor. Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief. Twombly, 550 U.S. at 570.[4]

## B. Invalidation of a Nonjudicial Foreclosure Sale under Washington Law

Plaintiffs seek a judicial declaration that the foreclosure sale that occurred on December 27, 2010, is void and of no effect. In support, they allege a host of irregularities in the procedures leading up to the sale and reasonable reliance on Wells Fargo's statements that the sale had been cancelled. Defendants focus on the procedural irregularities, arguing that plaintiffs have failed to allege facts in support of certain objections and/or have waived their

---

[4] Although this action was originally filed in state court, the Court applies Fed. R. Civ. P. 8 as interpreted by the Supreme Court in Twombly and Ashcroft v. Iqbal, 556 U.S. 662 (2009), when determining the adequacy of the pleading. Given that the Washington Supreme Court has declined to adopt the heightened Twombly/Iqbal standards, if a claim is dismissed on a Rule 12(b)(6) motion, leave to amend will be liberally granted if there is any chance that plaintiffs can allege facts, consistent with the allegations of the original complaint, that would give rise to a plausible claim for relief against defendants.

ORDER DENYING DEFENDANTS'
MOTION TO DISMISS                -5-

objections by failing to enjoin the foreclosure sale. Defendants do not address whether "the nonjudicial foreclosure process [was] fair and free from surprise." Cox v. Helenius, 103 Wn.2d 383, 387 (1985).

The DTA allows lenders to foreclose a mortgage without judicial supervision. Because of the relative ease with which lenders can dispossess borrowers of their interests, Washington courts construe the act in favor of borrowers and require lenders to strictly comply with its requirements. Udall v. T.D. Escrow Serv., Inc., 159 Wn.2d 903, 915-16 (2007); Albice v. Premier Mortg. Serv. of Wash., Inc., 174 Wn.2d 560, 567 (2012). In construing and applying the DTA, courts must be cognizant of its three goals: (1) to make the foreclosure process efficient and inexpensive; (2) to provide interested parties an adequate opportunity to prevent wrongful foreclosure; and (3) to promote the stability of land titles. Albice, 174 Wn.2d at 567.

In furtherance of the first and third goals, the DTA requires borrowers to assert objections they may have to a foreclosure sale prior to the date of the sale or risk a finding of waiver. RCW 61.24.040(1(f)(IX) ("Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale." See Schroeder v. Excelsior Mgmt. Group, LLC, 177 Wn.2d 94, 110-11 (2013). Waiver is not automatic, however. Albice, 174 Wn.2d at 570 (noting that the DTA "neither requires nor intends for courts to strictly apply waiver"). Waiver is an equitable construct, applicable only where the facts support a finding that the party has knowingly and intentionally relinquished his rights by failing to timely assert them. Albice, 174 Wn.2d at 569. A waiver of pre-sale objections occurs when "a party (1) received notice of the right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the sale." Plein v. Lackey, 149 Wn.2d 214, 229 (2003). Although the state courts have not yet settled on a checklist of items to consider when determining whether a borrower has

waived his right to challenge the trustee's sale, certain factors appear regularly in the case law, including:

> whether the statutory violation effectively divested the trustee of its statutory authority to conduct a nonjudicial sale;
>
> whether the borrower had an adequate opportunity to prevent the wrongful foreclosure;
>
> whether the lender or the trustee caused unfairness or surprise in the process;
>
> whether the purchaser at the trustee sale was on inquiry notice of the procedural irregularities or was truly innocent and would be unfairly harmed if the sale were voided;
>
> whether the sale price is grossly inadequate when compared to actual market value; and
>
> whether the borrower promptly asserted his or her objections after the sale.

See Schroeder, 177 Wn.2d at 107 (nonjudicial foreclosure sale will be set aside if pre-requisites to a trustee's sale are not satisfied, even where the parties have contractually agreed that the requirements have been met); Albice, 174 Wn.2d at 570 (where borrower reasonably believed that the sale would be cancelled based on the conduct of the parties, the purchaser had constructive knowledge of the procedural defect, and the borrower did not sleep on his rights, waiver does not apply); Udall, 159 Wn.2d at 914-15 (buyer's actual or constructive knowledge of borrower's claim combined with a grossly inadequate sale price may justify setting aside a foreclosure sale on equitable grounds); Cox, 103 Wn.2d at 389-90 (where a "trustee undertakes a course of conduct reasonably calculated to instill a sense of reliance" by the borrower and then acts inconsistently therewith, the foreclosure sale is void).

        When determining whether a waiver has occurred, the second goal of the DTA – to ensure that interested parties have a full and fair opportunity to avoid wrongful foreclosure – becomes particularly important. Albice, 174 Wn.2d at 571. Almost all of the cases in which the invalidation of a foreclosure sale is contemplated involved some sort of misleading behavior on the part of the lender or trustee that effectively deprived the borrower of a fair opportunity to

obtain a pre-sale injunction. See Albice, 174 Wn.2d at 564 (after accepting untimely payments for months, lender rejected final payment and failed to provide notice of breach, depriving borrower of an opportunity to object to sale); Cox, 103 Wn.2d at 389-90 (knowing that the existence of a default was disputed and that the borrowers believed they had taken the necessary steps to restrain the sale, trustee should not have proceeded with foreclosure); Rucker v. NovaStar Mortg., Inc., 177 Wn. App. 1 (2013) (trustee told borrowers that sale would be postponed due to uncertainty related to the origination of the loans, creating issue of fact regarding waiver). Where the lender or trustee provides adequate notice of the sale and refrains from making false promises or statements regarding its intent to foreclose, however, the state courts are not inclined to invalidate the sale for fear of making nonjudicial foreclosures unduly cumbersome and/or adversely affecting the reliability of land titles. See Frizzell v. Murray, __ Wn.2d __, 313 P.3d 1171 (2013).

**C.  Plausible Grounds for Invalidating the Foreclosure Sale**

Defendants are not entitled to dismissal of plaintiffs' declaratory judgment claim. Plaintiffs have alleged facts from which one could reasonably conclude that their failure to seek a pre-sale injunction did not waive their right to judicial review of the validity of the December 27, 2010, trustee's sale. Plaintiffs have adequately alleged that there was at least one statutory violation that would divest the trustee of its authority to conduct the foreclosure sale,[5] that Wells

---

[5] Plaintiffs allege, inter alia, that Wells Fargo was not the actual holder of the promissory note when it appointed NWTS as successor trustee in December 2009 and that defendants failed to comply with RCW 61.24.031 before issuing the August 2010 Notice of Default.  The bare assertion that Wells Fargo was not the "beneficiary" under the DTA is insufficient to nudge plaintiffs' claims from possible to plausible and may have been waived when plaintiffs failed to enjoin the sale.  There are, however, nonconclusory factual allegations from which one could conclude that defendants either failed to engage in the assessment and communication process required by RCW 61.24.031 or improperly pursued both loan modification negotiations and foreclosure at the same time.  There is also evidence that defendants filed a fraudulent declaration attesting to unsuccessful efforts to contact the home owners in order to mask these failures.  Defendants' reliance on the communication, assessment, and exploration that supposedly occurred in 2009 is unavailing.  See Watson v. Nw. Trustee Serv., Inc., 2014 WL 231966, at *3 (Wn. App. Jan. 21, 2014) (finding that where a new Notice of Trustee's Sale is required under the

ORDER DENYING DEFENDANTS'
MOTION TO DISMISS                -8-

Fargo repeatedly assured plaintiffs that the foreclosure sale would not proceed because the parties were working toward a loan modification, that defendants never attempted to contact plaintiffs regarding their renewed efforts to foreclose, that plaintiffs reasonably relied on Wells Fargo's assurances and did not realize they had to enjoin the sale scheduled for December 27, 2010, and that the purchaser, Wells Fargo, knew or should have known of the procedural irregularities. While there are other factors that could support a finding of waiver – not least of which is plaintiffs' failure to file suit until more than two years after the foreclosure sale occurred – plaintiffs have adequately alleged a plausible claim for invalidation of the sale.

## CONCLUSION

For all of the foregoing reasons, defendants' motion to dismiss (Dkt. # 9) is DENIED.

Dated this 7th day of February, 2014.

*[signature]*

Robert S. Lasnik
United States District Judge

---

DTA, the prerequisites for such Notice, including a Notice of Default and initial contact, must be satisfied anew). Failure to comply with the requirements of RCW 61.24.031 may have contributed to plaintiffs' belief that the noticed sale would not proceed and/or may have precluded a negotiated resolution of the default. These issues cannot be resolved in the context of defendants' motion to dismiss.

ORDER DENYING DEFENDANTS'
MOTION TO DISMISS              -9-