UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VINCE M. MULCAHY and BECKY L. MULCAHY,<br><br>               Plaintiffs,<br><br>        v.<br><br>FEDERAL HOME LOAN MORTGAGE CORPORATION, *et al.*,<br><br>               Defendants. | NO. C13-1227RSL<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS FREDDIE MAC, WELLS FARGO, AND MERS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on a motion for summary judgment filed by defendants Federal Home Loan Mortgage Corporation ("Freddie Mac"), Wells Fargo Bank, N.A. ("Wells Fargo"), and Mortgage Electronic Registration Systems, Inc. ("MERS"). Dkt. # 48. Having reviewed the memoranda, declarations, and exhibits submitted by the parties, and the remainder of the record, the Court finds as follows.

## BACKGROUND

The Court previously set forth the background of this case, but repeats it here for the ease of the reader. In July 2006, plaintiffs borrowed $417,000 from Golf Savings Bank to purchase property in Whatcom County. The promissory note was secured by a deed of trust, which lists Golf as "lender," Whatcom Land Title Insurance Company as "trustee," and MERS as both "beneficiary" and "nominee" for the lender and the lender's successors and assigns. Dkt. # 50-1 Ex. A (Note). Plaintiffs ran into financial difficulties in 2009 and defaulted on the loan. At the

ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 1

1  time, the debt had been purchased by defendant Freddie Mac, and defendant Wells Fargo was

2  servicing the loan.[1]

3      Plaintiffs, who were unaware that Freddie Mac had a beneficial interest in their loan,

4  began communicating and working with Wells Fargo to obtain a modification of the terms of

5  their promissory note.  Wells Fargo issued a Notice of Default under the Washington Deeds of

6  Trust Act ("DTA") on November 24, 2009, and appointed Northwest Trustee Services Inc

7  ("NWTS") as successor trustee shortly thereafter.  NWTS issued a Notice of Trustee's Sale,

8  setting April 2, 2010, as the sale date.  Plaintiffs continued their efforts to negotiate more

9  manageable loan terms and were assured that their home would not be foreclosed upon because

10  they were being evaluated for a modification.  In February 2010, the parties agreed to a

11  temporary modification.  Plaintiffs set up an automatic withdrawal in Wells Fargo's favor, and

12  the April foreclosure sale was cancelled (the Notice of Discontinuance of Trustee's Sale was not

13  signed and recorded until September 2010).  Although payments under the modified loan were

14  supposed to last for only three months, Wells Fargo made six automatic withdrawals from

15  plaintiffs' account beginning in February 2010 and ending in July 2010.

16      Plaintiffs allege that Wells Fargo stopped withdrawing mortgage payments and kicked

17  them out of the loan modification program because plaintiffs failed to submit a monthly profit

18  and loss statement.  In August 2010, NWTS obtained a beneficiary declaration from Wells Fargo

19  and issued a second Notice of Default under the DTA.  Decl. of Jeff Stenman (Dkt. # 30), Ex. 3;

20  Dkt. # 8-4 at 137.  A Foreclosure Loss Mitigation Form, signed by Wells Fargo, accompanied

21  the Notice of Default and declared:

---

[1] In December 2009, defendant MERS purported to assign whatever beneficial interest it had in the Deed of Trust to Wells Fargo. Dkt. # 8-4 at 31.

ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 2

> The Beneficiary or beneficiary's authorized agent has exercised due diligence to contact the borrower as required by [RCW 61.24.031(5)] and, after waiting fourteen days after the requirements of [RCW 61.24.031] were satisfied, the Beneficiary or Beneficiary's authorized agent sent to the borrowers(s) [sic], by certified mail, return receipt, the letter required under [RCW 61.24.031].

Dkt. # 8-4 at 140.  Wells Fargo's declaration that it had diligently but unsuccessfully attempted to contact plaintiffs is made under penalty of perjury, but was apparently made by someone with no personal knowledge of Wells Fargo's contacts with plaintiffs and without reviewing the transactional history or current status of the loan.

Plaintiffs attempted to rectify the deficiencies that got them kicked out of the loan modification program, sending in profit and loss statements as requested and repeating paperwork that had previously been submitted.  Nevertheless, a Notice of Trustee's Sale was issued on September 20, 2010, setting a sale date of December 27, 2010.  As the sale date approached, plaintiffs became increasingly nervous about the lack of a decision regarding their loan modification.  Throughout this period, Wells Fargo representatives assured plaintiffs that the foreclosure sale would not go forward because the parties were negotiating a modification.  On November 22, 2010, a Wells Fargo employee named Tabitha specifically told plaintiffs that the pending foreclosure sale had been cancelled.  Plaintiffs continued to pursue the loan modification, sending in whatever information and forms Wells Fargo requested.  When Wells Fargo requested additional information on December 18, 2010 (apparently Mrs. Mulcahy had not signed a financial information statement), it set a compliance deadline of December 28, 2010 (one day after the foreclosure sale had been scheduled to occur).  Plaintiffs had sent the requested information in on December 17, 2010, and called on December 20, 2010, to confirm that it had been received:  it had.  At no point did any Wells Fargo employee mention that the foreclosure sale was still pending on the property.

ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 3

1      Plaintiffs' property was sold to Wells Fargo on behalf of Freddie Mac at a foreclosure

2 auction on December 27, 2010.  Plaintiffs did not realize that the sale had occurred until they

3 received a notice of eviction in early 2011.  Plaintiffs filed this action in state court on December

4 28, 2012, seeking damages arising from various misrepresentations made to them during the loan

5 modification and foreclosure process, violations of the Deed of Trust Act, and violations of the

6 Consumer Protection Act.  Dkt. # 8-1 at 9.  King County Superior Court Judge Deborra E.

7 Garrett dismissed all of plaintiffs' claims as time-barred.  Although the damage claims asserted

8 by plaintiffs were expressly exempted from waiver under RCW 61.24.127(1), Judge Garrett

9 dismissed them because plaintiffs filed their lawsuit one day after the statute of limitations

10 expired.  RCW 61.24.127(2)(a).  Plaintiffs were, however, granted leave to amend their

11 complaint to seek a judicial invalidation of the trustee sale, rather than damages.  Judge Garrett

12 also reserved ruling on "whether, in the event the trustee's sale is determined to be void,

13 plaintiffs may be entitled to damages on claims or theories other than those asserted pursuant to

14 RCW 61.24.127."  Dkt. # 8-3 at 19.  The case was removed shortly after plaintiffs filed their

15 amended complaint.

16      Neither Wells Fargo nor Freddie Mac have attempted to evict plaintiffs from the property.

17 **DISCUSSION**

18 **A.**    <u>**Standard for Rule 56 Motion**</u>

19      Summary judgment is appropriate if, viewing the evidence in the light most favorable to

20 the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact

21 and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>L.A. Printex

22 Indus., Inc. v. Aeropostale, Inc.</u>, 676 F.3d 841, 846 (9th Cir. 2012).  The moving party "bears the

23 initial responsibility of informing the district court of the basis for its motion."  <u>Celotex Corp. v.

24 Catrett</u>, 477 U.S. 317, 323 (1986).  It need not "produce evidence showing the absence of a

25 genuine issue of material fact" but instead may discharge its burden under Rule 56 by "pointing

26 out . . . that there is an absence of evidence to support the nonmoving party's case."  <u>Id.</u> at 325.

27

28 ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 4

1   Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-

2   moving party fails to designate "specific facts showing that there is a genuine issue for trial." Id.

3   "The mere existence of a scintilla of evidence in support of the non-moving party's position is

4   not sufficient"; the opposing party must present probative evidence in support of its claim or

5   defense. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Intel

6   Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  "An issue is

7   'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could

8   find for the nonmoving party."  In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (internal

9   citations omitted).

10  **B.      Statute of Limitations**

11          The first issue the Court must address is whether the Mulcahys' claim for a declaration

12  voiding the December 27, 2010, sale of their property is time-barred.  The DTA does not contain

13  a statute of limitations that governs claims to void a sale.  Thus, Washington's "catch-all" statute

14  of limitations applies.  Under RCW 4.16.130, "[a]n action for relief not hereinbefore provided

15  for, shall be commenced within two years of after the cause of action shall have accrued."  It is

16  undisputed that the Mulcahys' property was sold on December 27, 2010, Dkt. # 50-1 Ex. B

17  (Trustee's Deed) at 8; that the Trustee's Deed was recorded on or about January 6, 2011, Dkt. #

18  50 (Declaration of Alisha Mulder) at ¶ 11; that the Mulcahys did not learn that their property had

19  been sold until sometime after January 18, 2011, Dkt. # 33 (Declaration of Vincent Mulcahy) at

20  ¶ 10; and that this action was filed on December 28, 2012, Dkt. # 8-1 Ex. A (Court Trax docket

21  sheet) at 2.  Whether the Mulcahys' claim is time-barred therefore turns on whether their claim

22  accrued on the date of the foreclosure sale or on any date thereafter.

23          Defendants contend that the two-year statute of limitations should run from the date of the

24  foreclosure sale.  Dkt. # 48 (Defendants' Motion for Summary Judgment) at 11-12.  They

25  support this position by reference to the DTA's statute of limitations for post-sale damages

26  claims, which provides that claims for damages must be brought within two years of the date of

27
28  ORDER ON DEFENDANTS'
    MOTION FOR SUMMARY JUDGMENT - 5

1    the foreclosure sale.  See RCW 61.24.127(2)(a).  Measuring from the date of the foreclosure

2    sale, defendants contend, will also further the DTA's goal of promoting the stability of land

3    titles.  See Albice v. Premier Mortgage Servs. of Wash., Inc., 174 Wn.2d 560, 567 (2012).  The

4    Mulcahys counter that the date from which to measure the two-year statute of limitations should

5    be the day in early 2011 that the Mulcahys were served the eviction summons and complaint

6    (and therefore learned about the foreclosure) or the date the Trustee's Deed was recorded,

7    effectively arguing that the time should run from the date the sale was, or could have been,

8    discovered.  Dkt. # 58 (Plaintiffs' Response) at 22-23.

9           Washington courts have observed that the "rule holding a cause of action has not accrued

10   until plaintiff has discovered that he has suffered injury or by the exercise of reasonable

11   diligence should have discovered it, is designed to prevent . . . injustice."  Gazija v. Nicholas

12   Jerns Co., 86 Wn. 2d 215, 220 (1975).  Under the discovery rule, "a statute of limitations does

13   not begin to run until the plaintiff, using reasonable diligence, would have discovered the cause

14   of action."  U.S. Oil & Refining Co. v. State Dep't of Ecology, 96 Wn.2d 85, 92 (1981).

15   "[W]hether or not to extend the discovery rule is a matter of judicial policy – the resolution of

16   which turns, in part, upon the need, as expressed by the legislature, to bar stale claims.  But this

17   legislative policy must be balanced against the unfairness of cutting off valid claims under

18   circumstances which constitute an avoidable injustice."  Peters v. Simmons, 87 Wn.2d 400, 405

19   (1976).

20          The legislature has expressed a preference that DTA claims stemming from a foreclosure

21   sale be brought within two years of the date of the sale.  See RCW 61.24.127(2)(a) (borrower

22   may bring an action for civil damages resulting from a foreclosure sale but "[t]he claim must be

23   asserted or brought within two years from the date of the foreclosure sale or within the

24   applicable statute of limitations for such claim, whichever expires earlier").  This preference is in

25   line with one of the three goals of the DTA: to promote the stability of land titles.  Albice, 174

26   Wn.2d at 567.

27

28   ORDER ON DEFENDANTS'
     MOTION FOR SUMMARY JUDGMENT - 6

1  On the other hand, however, courts have "a duty to construe and apply limitation statutes

2 in a manner that furthers justice." U.S. Oil, 96 Wn.2d at 93. If a plaintiff cannot ascertain that a

3 wrong had been committed, whether to apply the discovery rule is guided by a balancing test:

4 "the possibility of stale claims must be balanced against the unfairness of precluding justified

5 causes of action." Id. In reviewing cases that have applied the discovery rule, the Washington

6 Supreme Court observed that in each of the cases, "had the discovery rule not been applied, the

7 plaintiff would have been denied a meaningful opportunity to bring a warranted cause of action."

8 Id. Statutes of limitations are premised upon the belief that "when an adult person has a

9 justiciable grievance, he usually knows it and the law affords him ample opportunity to assert it

10 in the courts." Id. (internal quotation marks omitted). When this premise is inapplicable,

11 applying the discovery rule may be appropriate. Id.

12  In this case, the Mulcahys' claim to void the sale of their property was filed two years and

13 one day after the foreclosure sale and within two years of the date they could have learned that

14 their property had been sold. The Mulcahys have provided evidence that Wells Fargo misled

15 them about the status of the December 27, 2010, foreclosure sale. Specifically, Vince Mulcahy

16 declared under penalty of perjury that the Mulcahys were told that the sale had been canceled

17 and that they were eligible for a loan modification. Dkt. # 33 (Declaration of Vince Mulcahy)

18 ¶¶ 6, 9. Whether intentional or not, Wells Fargo's actions undermined the premise of a statute of

19 limitations – that the Mulcahys were aware that they had a justiciable grievance on December

20 27, 2010. The Mulcahys repeatedly sought information regarding the status of the foreclosure

21 sale and through no fault of their own did not learn that it had occurred until January 2011. To

22 apply the statute of limitations to prevent the Mulcahys from bringing a claim within two years

23 of learning about it would create an avoidable injustice. The Mulcahys' claim is not time-

24 barred.

25 **C.  Validity of the Foreclosure Sale**

26  The DTA allows lenders to foreclose a mortgage without judicial supervision. Because of

27

28 ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 7

the relative ease with which lenders can dispossess borrowers of their interests, Washington courts construe the act in favor of borrowers and require lenders to strictly comply with its requirements. Udall v. T.D. Escrow Serv., Inc., 159 Wn.2d 903, 915-16 (2007); Albice v. Premier Morg. Serv. of Wash., Inc., 174 Wn.2d 560, 567 (2012). In construing and applying the DTA, courts must be cognizant of its three goals: (1) to make the foreclosure process efficient and inexpensive; (2) to provide interested parties an adequate opportunity to prevent wrongful foreclosure; (3) to promote stability of land titles. Albice, 174 Wn.2d at 567.

The DTA establishes procedural requirements to conduct a trustee's sale, and "procedural irregularities, such as those divesting a trustee of its statutory authority to sell the property, can invalidate the sale." Albice, 174 Wn.2d at 567. The Mulcahys have raised genuine issues of material fact with respect to at least two procedural requirements under the DTA, and therefore defendants cannot be granted summary judgment on the Mulcahys' claim for declaratory relief.

### 1. Proof of Wells Fargo's Authority to Initiate the Foreclosure Sale

Section 61.24.030 of the Revised Code of Washington provides that one of the requisites to a trustee's sale is that "before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust." RCW 61.24.030(7)(a). Proof can be in the form of a "declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust . . . ." Id. The Supreme Court of Washington has addressed the required content of beneficiary declarations in two recent decisions. In each, the beneficiary declaration at issue stated that the beneficiary was the actual holder of the promissory note or had the requisite authority under RCW 62A.3-301 to enforce the obligation. See Trujillo v. Nw. Tr. Servs., Inc., 183 Wn.2d 820, 827-28 (2015); Lyons v. U.S. Bank Nat'l Ass'n, 181 Wn.2d 775, 780 (2014). In both cases, the court held that a declaration that left open the possibility that the beneficiary was not the actual

ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 8

1  holder did not satisfy RCW 61.24.030(7)(a).  <u>Trujillo</u>, 183 Wn.2d at 833-34; <u>Lyons</u>, 181 Wn.2d

2  at 791.  Therefore, the Court concluded in each case that NWTS could not lawfully rely on the

3  declaration to prove that Wells Fargo was the owner of the note.  <u>Id.</u>

4       Wells Fargo's two beneficiary declarations in this case contain the same ambiguous

5  language as those in <u>Lyons</u> and <u>Trujillo</u>: "Wells Fargo Bank, NA, is the actual holder of the

6  promissory note or other obligation evidencing the above-referenced loan or has the requisite

7  authority under RCW 62A.3-301 to enforce said obligation."  Dkt. ## 30-1 (November 23, 2009,

8  Beneficiary Declaration); 30-3 (August 11, 2010, Beneficiary Declaration).  Because there

9  remains an issue of fact regarding whether NWTS had proof that Wells Fargo was the owner of

10  the promissory note as required by the DTA, defendants are not entitled to summary judgment

11  on plaintiffs' claim for declaratory relief.

12      **2.**    **Notice of Foreclosure Sale to Plaintiffs**

13       It is a requisite for a trustee's sale that "for owner-occupied residential real property,

14  before the notice of trustee's sale is recorded, transmitted, or served, the beneficiary has

15  complied with RCW 61.24.031."  RCW 61.24.030(9).  In their reply, defendants "concede that

16  the Mulcahys have raised issues of fact regarding whether they were properly informed of the

17  December 27, 2010, sale date . . . ."  Dkt. # 67 at 1.  The factual issues pertaining to notice to the

18  Mulcahys also preclude defendants' motion for summary judgment.

19      **3.**    **Waiver**

20       Notwithstanding defendants' concession regarding the factual issues pertaining to notice,

21  they argue that the Mulcahys' claim to set aside the sale is barred by waiver.  Dkt. ## 41

22  (Defendants' Motion for Summary Judgment) at 14-18; 67 (Defendants' Reply) at 4-5.  Waiver

23  is considered through an equitable lens.  <u>Albice</u>, 174 Wn.2d at 569.  In its order denying

24  defendants' motion to dismiss, the Court set forth factors it may consider when determining

25  whether a borrower has waived his right to challenge a trustee's sale.  Dkt. # 35 at 6-7.  There

26  remain issues of fact as to a number of those factors: whether the statutory violation divested

27

28  ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 9

1  NWTS of its authority to conduct a non-judicial foreclosure sale, whether the Mulcahys had an

2  adequate opportunity to prevent wrongful foreclosure, and whether Wells Fargo caused

3  unfairness in the process.  See id. at 7.  In light of these issues, it would be neither equitable nor

4  in service of the DTA's goal to allow interested parties an opportunity to prevent wrongful

5  foreclosure to find that the Mulcahys' claim was waived.  See Albice, 174 Wn.2d at 570 (Under

6  the DTA, a court applies "waiver only where it is equitable under the circumstances and where it

7  serves the goals of the act.").

8  **D.   Claim to Quiet Title**

9        The Mulcahys seek to quiet title in their name.  Dkt. # 1-2 (Complaint) at 15-16.  As

10 defendants assert, to "maintain a quiet title action against a mortgagee, a plaintiff must first pay

11 the outstanding debt on which the subject mortgage is based."  Dkt. # 48 (Defendants' Motion

12 for Summary Judgment) at 18 (citing Evans v. BAC Home Loans Servicing LP, No. C10-0656

13 RSM, 2010 WL 5138394, at *4 (W.D. Wash. Dec. 10, 2010)).  Plaintiffs did not argue that they

14 are not required to pay the outstanding debt, nor did they offer proof that they have paid it.  See

15 generally Dkt. # 58 (Plaintiff's Response).  Accordingly, plaintiffs' claim to quiet title is

16 dismissed.

17 **E.   Dismissal of MERS**

18       Defendants seek to dismiss MERS with prejudice because the Mulcahys have neither

19 post-sale damages claims against MERS nor a claim for declaratory relief as to MERS.  Dkt. #

20 48 (Defendant's Motion for Summary Judgment) at 20.  Plaintiffs did not object to this

21 dismissal, see generally Dkt. # 58 (Plaintiff's Response), and MERS is accordingly dismissed

22 with prejudice.

23 **F.   Counterclaim for Payment of "Rent"**

24       Defendant Freddie Mac argues that the Mulcahys are tenants at sufferance and therefore

25 liable to it for "reasonable rent" from December 27, 2010, onward.  The Court has not found,

26 and Freddie Mac did not cite, a single case in which a trustee's sale purchaser was held to be

27

28 ORDER ON DEFENDANTS'
   MOTION FOR SUMMARY JUDGMENT - 10

1   entitled to rent payments from the occupant of a property that was subject to non-judicial

2   foreclosure under the DTA.  Perhaps for good reason: The DTA does not contemplate claims for

3   rental payments to the purchaser at a trustee's sale and appears to limit the rights and remedies of

4   a trustee's sale purchaser.  The section entitled "Rights and remedies of trustee's sale purchaser

5   – Written notice to occupants or tenants," gives the purchaser at a trustee's sale the right "to

6   possession of the property on the twentieth day following the sale, as against the borrower and

7   grantor under the deed of trust . . . who were given all of the notices to which they were entitled

8   under this chapter."  RCW 61.24.060.  The exclusive remedy for the purchaser provided by this

9   section is "a right to the summary proceedings to <u>obtain possession</u> of real property provided in

10  chapter 59.12 RCW [unlawful detainer actions]."  <u>Id.</u> (emphasis added).

11      Washington courts have clearly held that because the DTA does not provide many of the

12  protections afforded to borrowers under judicial foreclosures, "courts must strictly construe the

13  statutes in the borrower's favor."  <u>Albice v. Premier Mortg. Serv. of Wash., Inc.</u>, 174 Wn.2d

14  560, 567 (2012); <u>Udall v. T.D. Escrow Serv., Inc.</u>, 159 Wn.2d 903, 915-16 (2007).  For two

15  reasons, it appears that a claim for rent is not available to a purchaser at a trustee's sale.  First, a

16  claim for rent is not a remedy provided to purchasers at a trustee's sale under the DTA.  Second,

17  this claim for rent could be made without the procedural protections for borrowers set forth in

18  RCW 61.24.060.  Mindful that the DTA dispenses with many protections for borrowers and

19  therefore must be strictly construed in the borrowers' favor, the Court will not grant summary

20  judgment for Freddie Mac on its claim for rent.

### CONCLUSION

22      For the foregoing reasons, the Court GRANTS in part and DENIES in part defendants'

23  motion for summary judgment (Dkt. # 48).  Plaintiffs' claim to quiet title is DISMISSED and

24  defendant MERS is DISMISSED with prejudice.

25  //

26  //

27

28  ORDER ON DEFENDANTS'
    MOTION FOR SUMMARY JUDGMENT - 11

1    DATED this 14th day of December, 2015.

2

3

4                                    Robert S. Lasnik
                                     United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   ORDER ON DEFENDANTS'
     MOTION FOR SUMMARY JUDGMENT - 12